Frederick Ackerman and Rose P. Ackerman v. Commissioner. Robert M. Hanover and Mildred Hanover v. Commissioner.
Ackerman v. Commissioner
Docket Nos. 68347 and 68348.
United States Tax Court
T.C. Memo 1959-164; 1959 Tax Ct. Memo LEXIS 84; 18 T.C.M. (CCH) 715; T.C.M. (RIA) 59164; August 25, 1959
Nathanial Levine, C.P.A., 570 Seventh Avenue, New York, N. Y., for the petitioners. Victor H. Frank, Jr., Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax as follows: Year
Amount
Frederick Ackermans
1949
$3,328.82
Robert Hanovers
1949
3,331.82
Robert Hanovers
1950
3,093.10 The only issue for decision in each case is whether amounts received in the taxable years by Frederick and Robert are taxable to them as ordinary income. The facts have been presented solely by stipulations which are adopted as the findings of fact. The Ackermans are husband and wife, and the Hanovers are husband and wife. Their joint returns for the taxable *85 years were filed with the collector of internal revenue for the first district of New York. Robert M. Hanover & Co., Inc. (hereafter called the corporation), was organized on January 1, 1947, in New York. It continued the business of a partnership. The 500 shares of outstanding stock of the corporation were owned equally by Frederick and Robert. Robert was president and Frederick was treasurer of the corporation. The corporation was licensed by the Chrysler Corporation to sell Chrysler and Plymouth automobiles. Frederick experienced pains in the region of his heart during 1949 and 1950. He consulted various doctors and clinics and was advised not to smoke and not to undertake another business venture which would involve pressure, drive or emotional tension but instead to compromise on an easier level of work. The corporation sold the Chrysler and Plymouth license and certain other properties in November 1949. The accumulated earnings and profits of the corporation at the end of 1948, 1949 and 1950 amounted to $86,934.13, $120,650.96 and $45,906.47 and to $108,010.84 on April 30, 1950. The corporation had profits, after taxes, of $47,800.71 for 1948 and $33,716.83 for 1949 and *86 losses of $14,717.69 for the first four months of 1950 and $21,095.46 for the year 1950. No dividends were ever declared by the corporation. The corporation paid Frederick and Robert salaries of $15,600 for 1949, and for 1950 $5,100 to Frederick and $7,500 to Robert. The corporation kept separate "running" accounts for Frederick and Robert. All moneys drawn by each were debited and all salaries and withholding taxes were credited to these accounts. The balances due in the accounts were described in the income tax returns of the corporation for 1949 and 1950 as "due from officers." Frederick's account for 1949 shows total debits of $19,076.48 and credits of $7,802.80, plus an old balance as of January 1 in the amount of $443.60, or total credits of $8,246.40. The net excess of withdrawals over credits was thus $10,830.08. Robert's account for 1949 shows total debits of $18,765.41 and credits of $7,802.81. The net excess of withdrawals over credits was thus $10,962.60. The similar net excess in the account for 1950 was $12,361.71. The credits for 1949 in the two accounts are identical as to dates and amounts except for the January 1 old balance in Frederick's account and except *87 for a variation of one cent in a small item. Each account shows 8 withdrawals of $156.40 each, 4 withdrawals of $195.50 each, 2 withdrawals of $2,500 each and 2 withdrawals of $1,000 each during 1949. Frederick's account shows withdrawals of $635.82 on April 30, $1,135.82 on July 31, $135.82 on October 31 and $135.82 on December 31, while Robert's account shows the following withdrawals on corresponding dates: $766.08, $1,111.58, $111.58 and $111.57. Frederick, Robert and the corporation entered into an agreement dated May 17, 1950, whereby Frederick transferred his 250 shares to the corporation for By transfer of an automobile
$ 1,567.99
"By cancelling and discharging
the indebtedness of Ackerman
to the corporation"
18,395.82
By check of corporation
58,002.82
$77,966.63 The Ackermans then resigned their offices and directorships in the corporation. The only income from the corporation reported by the Ackermans for 1949 was salary of $15,600 and the only income from the corporation wihth they reported for 1950 was salary of $5,100 and a long-term capital gain of $52,042.63 from the sale of the 250 shares of stock, one-half of which was reported as taxable *88 income. The Commissioner, in determining the deficiency against the Ackermans, included $10,830.80 in taxable income for 1949 with the following explanation: It is held that as a result of certain withdrawals, distributions, or payments from corporate funds of Robert M. Hanover & Co., Inc., you realized income in the form of salary, wages, dividends, or distributions essentially equivalent to dividends reportable under Section 22(a) of the Internal Revenue Code of 1939 in the calendar years 1949 and 1950 in the amounts of $10,830.08 and $7,565.74, respectively. He eliminated one-half of the total of the two amounts mentioned in the above-quoted explanation from the amount reported for 1950 as taxable income from long-term capital gains. The only income from the corporation reported by the Hanovers on their returns for 1949 and 1950 was salary of $15,600 for 1949 and of $7,500 for 1950. The Commissioner, in determining the deficiencies against the Hanovers, added to income $10,962.60 for 1949 and $12,361.71 for 1950, with an explanation substantially the same as that given in the case of the Ackermans. No interest was charged or paid in connection with the withdrawals involved *89 herein. No notes or other similar evidences of any indebtedness or loans were ever executed. The record does not show why the excess withdrawals were made, what the intention of either Frederick or Robert was with respect to them, that there was any agreement between the corporation and the stockholders with relation to the withdrawals, or, if there was any agreement, what the terms thereof were, whether any net debits were to be repaid and if so the time or method of repayment or any maximum amounts which could be withdrawn. No petitioner testified. The determination of the Commissioner in these cases is presumed to be correct and the burden of proof to show error is upon the taxpayers. The decision in each case depends upon the evidence in the record in that case. The record in neither case justifies any change in the deficiencies determined by the Commissioner. Decisions will be entered for the Commissioner.